UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Northern Auto Parts, Inc.** : | |
| : | |
| Plaintiff, : | **JURY TRIAL DEMANDED** |
| : | |
| v. : | |
| : | |
| E. I. du Pont de Nemours and Co., DuPont : | |
| Performance Coatings, Inc., Sherwin-Williams : | |
| Co., Sherwin-Williams Automotive Finishes : | |
| Corporation, PPG Industries, Inc., BASF : | |
| Aktiengesellschaft, BASF Coatings AG, : | |
| BASF Corporation, Akzo Nobel Car : | |
| Refinishes B.V., and Akzo Nobel Coatings, Inc. : | |
| : | |
| Defendants. : | |
| : | |
| THIS DOCUMENT RELATES TO: : | |
| : | |
| IN RE AUTOMOTIVE REFINISHING : | MDL Docket No. 1426 |
| PAINT ANTITRUST LITIGATION : | Master Docket No. 01-CV-2830 |
| : | |

**CLASS ACTION COMPLAINT**

Plaintiff, by its undersigned attorneys, individually and on behalf of the class described below, brings this action against the defendants named herein for damages and injunctive relief under the antitrust laws of the United States. Plaintiff demands a trial by jury, and complains and alleges, upon information and belief except as to those paragraphs applicable to the named plaintiff that are based upon personal knowledge, as follows:

## NATURE OF THE CASE

1.      This lawsuit is brought as a class action on behalf of all individuals and entities who purchased automotive refinishing paint in the United States directly from defendants, their predecessors, controlled subsidiaries or co-conspirators from January 1, 1993 to December 31, 2000 (the "Class Period").  Plaintiff alleges that during the Class Period defendants conspired to fix, raise, maintain or stabilize prices for automotive refinishing paint sold in the United States. Because of defendants' unlawful conduct, plaintiff and the other class members paid artificially inflated prices for automotive refinishing paint and, as a result, have suffered antitrust injury to their business and property.

2.      This action is also instituted to obtain injunctive relief against defendants and their employees, agents, subsidiaries and affiliates to prevent and restrain them from further and continued violations of Section 1 of the Sherman Act.

## JURISDICTION AND VENUE

3.      Plaintiff brings this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, for treble damages and injunctive relief, as well as reasonable attorneys' fees and costs of suit, for defendants' violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

4.      Jurisdiction is conferred upon this Court by 28 U.S.C. § 1337, and by Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

5.      Venue is proper in this judicial district pursuant to 15 U.S.C. § 22 and 28 U.S.C. § 1391(b), (c) and (d) because during the Class Period one or more of the defendants resided,

transacted business, was found, or had agents in this district, and because a substantial part of the events giving rise to plaintiff's claims occurred, and a substantial portion of the affected interstate trade and commerce described below, has been carried out in this district.

### DEFINITIONS

6.     "Automotive Refinishing Paint" refers to paint products applied to motor vehicles subsequent to the initial manufacturing process.  Used primarily in collision repair facilities, automotive refinishing paint differs from Original Equipment Manufacturing ("OEM") paint systems in both its chemical composition and application.  Because of the extreme temperatures achieved during the application and hardening process, OEM paint systems are suitable only for bare car bodies, whereas automotive refinishing paint is applied and cools at much lower temperatures.  As used herein, "Automotive Refinishing Paint" includes base coat paint, clear coat paint, single stay finish, primer, thinner and hardener.

7.     "Class Period" means the period from January 1, 1993 through December 31, 2000.

8.     "Person" means any individual, partnership, corporation, association or other business or legal entity.

### PLAINTIFF

9.     Plaintiff Northern Auto Parts, Inc. ("Northern Auto Parts") was at all relevant times a Minnesota corporation with its principal place of business in International Falls,

Minnesota. During the period covered by this Complaint, Northern Auto Parts was a retailer and wholesaler of auto parts and auto paints which it sold to individuals, mechanics and body shops. Northern Auto Parts purchased automotive refinishing paint directly from E.I. Dupont de Nemours and Company for many years and was injured in its business and property by reason of the antitrust violations alleged herein.

## DEFENDANTS

10.     Defendant PPG Industries, Inc. ("PPG") is a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania. PPG manufactured and sold automotive refinishing paint in the United States during the Class Period, both directly and through its subsidiaries. PPG's Coatings segment, which includes automotive refinishing paint, is its largest and most profitable segment, accounting for 55% of PPG's revenues in 2000. PPG has the second largest share of the domestic automotive refinishing paint market, with sales in 2000 of over $1.1 billion.

11.     Defendant E.I. DuPont de Nemours and Company ("E.I. DuPont") is a Delaware corporation with its principal place of business in Wilmington, Delaware. E.I. DuPont manufactured and sold automotive refinishing paint in the United States during the Class Period, both directly and through its subsidiaries. E.I. DuPont is the largest producer of automotive refinishing paint sold in the United States.

12.     Defendant DuPont Performance Coatings, Inc. ("DuPont Coatings") is a Delaware corporation with its principal place of business in Wilmington, Delaware. DuPont Coatings is a

subsidiary of E.I. DuPont, and E.I. DuPont controls DuPont Coatings both generally and with regard to the conduct of DuPont Coatings in furtherance of defendants' unlawful combination and conspiracy. DuPont Coatings manufactured and sold automotive refinishing paint in the United States during the Class Period. Defendants E.I. DuPont and DuPont Coatings are collectively referred to as "DuPont."

13. Defendant Sherwin-Williams Co. is an Ohio corporation with its principal place of business in Cleveland, Ohio. Sherwin-Williams Co. manufactured and sold automotive refinishing paint in the United States during the Class Period, both directly and through its subsidiaries. The company's Automotive Finishes segment had sales in 2000 of over $493 million.

14. Defendant Sherwin-Williams Automotive Finishes Corporation ("Sherwin-Williams Finishes") is an Ohio corporation with its principal place of business in Warrensville Heights, Ohio. Sherwin-Williams Finishes is a subsidiary of Sherwin-Williams Co., and Sherwin-Williams Co. controls Sherwin-Williams Finishes both generally and with regard to the conduct of Sherwin-Williams Finishes in furtherance of defendants' unlawful combination and conspiracy. Sherwin-Williams Finishes manufactured and sold automotive refinishing paint in the United States during the Class Period. Defendants Sherwin-Williams Co. and Sherwin-Williams Finishes are collectively referred to as "Sherwin-Williams."

15. Defendant BASF Aktiengesellschaft ("BASF AG") is a German corporation based in Ludwigshafen, Germany with extensive operations and affiliates in the United States. BASF AG manufactured and/or sold automotive refinishing paint in the United States during the Class Period.

16. Defendant BASF Coatings AG is a German corporation based in Muenster, Germany with extensive operations and affiliates in the United States. BASF Coatings AG is a subsidiary of BASF AG. BASF Coatings AG manufactured and/or sold automotive refinishing paint in the United States during the Class Period.

17. Defendant BASF Corporation ("BASF Corp.") is a Delaware Corporation with its principal place of business in Mount Olive, New Jersey. BASF Corp. is a subsidiary of BASF AG, and BASF AG controls BASF Corp. both generally and with regard to the conduct of BASF Corp. in furtherance of defendants' unlawful combination and conspiracy. BASF Corp. manufactured and/or sold automotive refinishing paint in the United States during the Class Period. Defendants BASF AG, BASF Coatings AG and BASF Corp. are collectively referred to as "BASF."

18. Defendant Akzo Nobel Car Refinishes B.V. is a Dutch corporation based in Sassenheim, The Netherlands with extensive operations and affiliates in the United States. Akzo Nobel Car Refinishes B.V. is a subsidiary of Akzo Nobel N.V. Akzo Nobel Car Refinishes B.V. manufactured and/or sold automotive refinishing paint in the United States during the Class Period.

19. Defendant Akzo Nobel Coatings, Inc. ("Akzo Nobel Coatings") is a Delaware corporation with its principal place of business in Norcross, Georgia. Akzo Nobel Coatings is a wholly-owned subsidiary of Akzo Nobel Inc. Akzo Nobel Coatings manufactured and/or sold automotive refinishing paint in the United States during the Class Period. Defendants Akzo Nobel Car Refinishes B.V. and Akzo Nobel Coatings, Inc. are collectively referred to as "Akzo

Nobel." The estimated global sales of Akzo Nobel Coatings in 1999 were $5.5 billion, with U.S. sales accounting for $750 million. Automotive refinishing paint represents approximately 12% of the sales of Akzo Nobel Coatings.

20. Wherever in this Complaint reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

## CO-CONSPIRATORS

21. Various other persons, firms and corporations, not named in this Complaint, have participated as co-conspirators with the defendants in the violations alleged herein, and may have aided, abetted and performed acts and made statements in furtherance thereof.

## CLASS ACTION ALLEGATIONS

22. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

23. Plaintiff brings this action on its own behalf and as a class action under the provisions of Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the following class:

> All individuals or entities (excluding governmental entities, Defendants, their parents, subsidiaries and affiliates, and their co-conspirators) who purchased automotive refinishing paint in the United States directly from any of the Defendants or any subsidiary

or affiliate thereof, or any co-conspirator, at any time during the period from January 1, 1993 to December 31, 2000.

24. Plaintiff does not know the exact number of class members, because such information is in the exclusive control of defendants. Due to the nature of the trade and commerce involved, however, plaintiff believes that class members are sufficiently numerous and geographically dispersed throughout the United States so that joinder of all class members is impracticable.

25. There are questions of law or fact common to the class, including:

(a) Whether defendants engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize prices of automotive refinishing paint sold in the United States;

(b) The duration and extent of the combination or conspiracy alleged in this Complaint;

(c) Whether the alleged combination or conspiracy violated Section 1 of the Sherman Act;

(d) Whether defendants and their co-conspirators actively concealed the combination or conspiracy from plaintiff and the other class members;

(e) The effect of defendants' combination or conspiracy on the prices of automotive refinishing paint sold in the United States during the Class Period; and

(f) The appropriate measure of damages sustained by plaintiff and other members of the class.

26.     Plaintiff is a member of the class, plaintiff's claims are typical of the claims of the class members, and plaintiff will fairly and adequately protect the interests of the class.  Plaintiff is a direct purchaser of automotive refinishing paint and its interests are coincident with and not antagonistic to those of the other members of the class.  In addition, plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

27.     The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for defendants.

28.     The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

29.     A class action is superior to other methods for the fair and efficient adjudication of this controversy.  Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender.  Class treatment will also permit the adjudication of relatively small claims by many class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint.  This class action likely presents no difficulties in management that would preclude maintenance as a class action.  Finally, the class is readily definable and is one for which records should exist.

## **TRADE AND COMMERCE**

30. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

31. The activities of defendants and their co-conspirators, as described in this Complaint, were within the flow of, and substantially affected, interstate commerce.

32. During the time period covered by this Complaint, defendants and their co-conspirators sold and distributed automotive refinishing paint throughout the United States.

33. Defendants have manufactured, sold and shipped substantial quantities of automotive refinishing paint in a continuous and uninterrupted flow of interstate commerce to customers located in states other than the states in which the defendants produced automotive refinishing paint.

34. Defendants have an aggregate share of approximately 90% of the United States market for automotive refinishing paint. In 2000, sales of automotive refinishing paint in the United States exceeded $2.1 billion.

## FACTS

35. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

36. Automotive refinishing paint is a paint formulation that is manufactured, marketed and sold by defendants throughout the United States. As used in this Complaint, automotive refinishing paint refers to base coat paint, clear coat paint, single stay finish, primer, thinner and hardener.

37.     Automotive refinishing paint differs from OEM paint systems in both its chemical composition and application.  OEM paint systems are machine-applied and hardened at high temperatures (130-170°C).  Because of the extreme temperatures achieved during the application and hardening process, OEM paint systems are only suitable for bare car bodies.

38.     Used primarily in collision repair facilities, including dealer autobody shops, automotive refinishing paint is applied at lower temperatures and often by hand.  Because it is applied and cools at lower temperatures, automotive refinishing paint can be used without causing damage to a vehicle's windows, engine or electrical system.  The objective in selecting and applying automotive refinishing paint is to realize the closest possible match to the original finish applied by the OEM paint system.

39.     Sales of automotive refinishing paint in the United States exceeded $2.1 billion in 2000.  The U.S. market for automotive refinishing paint is highly concentrated and is dominated by the defendant-manufacturers.  The five major manufacturers -- Akzo Nobel, BASF, DuPont, PPG and Sherwin-Williams -- control approximately 90% of the market.  Recent acquisitions, including PPG's acquisition of ICI Autocolor from ICI Paints and Duponts acquisition of Herberts of Germany from Hoechst AG, have further consolidated the supply base.

40.     Average annual prices of automotive refinishing paint increased during the Class Period, despite the fact that sales levels and demand were flat (due in part to improvements in OEM paint technologies resulting in longer lasting finishes, as well as improved safety features in motor vehicles -- e.g., antilock brakes -- that have resulted in fewer accidents).  Defendants each

issued price increase announcements during the Class Period which attributed the increases in price to increases in the costs of raw materials.

41. The price increases were not consistent with those in a competitive market and were not in proportion to increases in the costs of production. For example, between 1995 and 1997, prices of automotive refinishing paint increased approximately 16% on average, while prices for crude petroleum and natural gas -- the principal raw materials in automotive refinishing paint -- increased only 2.99%. In addition, in 1998 prices of automotive refinishing paint climbed by approximately 7%, while crude oil and natural gas prices declined 25.41% and returned to 1995 levels.

42. Defendants and their co-conspirators had numerous opportunities to form and effect the contract, combination and conspiracy alleged herein through, *inter alia*, meetings and telephone conversations between their respective representatives. These opportunities included trade association meetings. Each of the domestic defendants attended meetings of the International Autobody Congress and Exposition (NACE), held annually during the Class Period.

43. In January 2001, the Antitrust Division of the United States Department of Justice commenced an investigation into price fixing in the automotive refinishing industry. The commencement of the Justice Department's investigation was reported in an article appearing in the Wall Street Journal on June 4, 2001.

44. According to an industry trade publication, defendants are alleged to have met in Europe for the purpose of conspiring to fix wholesale prices for automotive refinishing paints in the United States.

45.     The Justice Department, *inter alia*, subpoenaed documents from defendants, the world's five largest manufacturers of paint, and convened a grand jury to hear and analyze evidence. A review of these documents began in March or April 2001 and is ongoing. The Justice Department has indicated that it is in the process of identifying persons to testify before the grand jury, and that witnesses will be called to give testimony in the near future.

46.     Each defendant has issued a statement publicly acknowledging the commencement of the investigation. PPG disclosed that "the antitrust division has initiated a grand jury investigation to determine whether there has been unlawful conduct affecting the sale of automotive-refinishing products in the United States during the last five years."

47.     In connection with the Justice Department's investigation and similar ongoing investigations in Canada and the European Union, Akzo Nobel N.V. (parent company of defendants Akzo Nobel Car Refinishes B.V. and Akzo Nobel Coatings, Inc.) recently announced that it has set aside a reserve of $126.9 million to cover possible fines. On June 5, 2001, an article appearing in the De Telegraaf of the Netherlands stated, in relevant part:

> Akzo under fire over alleged price agreements in US (Akzo ordervuur wegens vermeende prijsafspraken) 06/05/2001 De Telegraaf 13 Copyright (c) Abstracted from De Telegraaf in Dutch; Source: World Reporter (TM)
>
> Dutch chemicals group Akzo Nobel has been accused by the U.S. Justice Department of having participated in illegal price agreements on the market for car-paint products. Over the past five years, the chemicals groups has allegedly been involved in a cartel whose other members include the U.S. companies DuPont, Sherwin-Williams and PPG Industries.
>
> Legal proceedings on this issue started in January of this year. A U.S. federal grand jury is studying evidence and hearing witnesses,

and will soon rule on the necessity for further legal action. Akzo chairman Kees van Lede told shareholders about this investigation during his presentation of the company's annual report. Akzo has set aside a provision of 150m euros to cover a possible fine.

## **VIOLATIONS ALLEGED**

48. Beginning at least as early as January 1, 1993, and continuing until December 31, 2000, the exact dates being unknown to plaintiff, defendants and their co-conspirators entered into and engaged in a contract, combination and conspiracy to fix, raise, maintain or stabilize the prices for automotive refinishing paint in unreasonable restraint of trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

49. Upon information and belief, for the purpose of formulating and effectuating the aforesaid contract, combination and conspiracy, defendants engaged in anti-competitive activities, the purpose and effect of which were to artificially fix, raise, maintain or stabilize the prices for automotive refinishing paint. Defendants' anti-competitive activities include:

    (a) Participating in meetings and conversations, including through various trade organizations and at conventions, to discuss the prices of automotive refinishing paint in the United States and elsewhere;

    (b) Agreeing during those meetings to fix, raise, maintain and stabilize the prices at which automotive refinishing paint was sold in the United States and elsewhere;

    (c) Agreeing to refrain and in fact refraining from competing among themselves with respect to the sale of automotive refinishing paint; and

   (d) Selling automotive refinishing paint to customers in the United States at supra competitive prices.

 50. Defendants and their co-conspirators engaged in the activities described above for the purpose of effectuating the unlawful conspiracy described in this Complaint.

 51. The aforesaid combination and conspiracy has had the following effects, among others:

   (a) price competition in the sale of automotive refinishing paint by defendants and their co-conspirators has been restrained, suppressed and eliminated;

   (b) prices for automotive refinishing paint sold by defendants and their co-conspirators have been raised, fixed, maintained or stabilized at artificially high and noncompetitive levels; and

   (c) Plaintiff has been deprived of the benefit of free and open competition in the market for automotive refinishing paint.

## FRAUDULENT CONCEALMENT

 52. Plaintiff had no knowledge of the contract, combination or conspiracy alleged herein or of any facts that might have led to the discovery thereof in the exercise of reasonable diligence. Plaintiff could not have discovered the contract, combination or conspiracy at an earlier date by the exercise of due diligence because of the deceptive practices and techniques of secrecy employed by defendants and their co-conspirators to avoid detection of, and fraudulently conceal,

their contract, combination, or conspiracy. These techniques of secrecy included, but were not limited to, secret meetings and misrepresentations concerning the reasons for price increases.

53.     Because the contract, combination or conspiracy was kept secret by defendants and their co-conspirators, plaintiff was unaware of the fact that prices of automotive refinishing paint were secretly agreed upon as alleged herein.

54.     As a result of the fraudulent concealment of the conspiracy, plaintiff asserts the tolling of the applicable statute of limitations affecting the right of action by plaintiff.

## DAMAGES

55.     During the Class Period plaintiff, and each member of the class it represents, purchased automotive refinishing paint directly from defendants and their co-conspirators and, by reason of the antitrust violations alleged, paid more for automotive refinishing paint than they would have paid in the absence of such antitrust violations. As a result, plaintiff and each member of the class it represents have been injured and damaged in an amount presently undetermined.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays that:

(a) the Court certify this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(b) the unlawful contract, combination and conspiracy alleged herein be adjudged and decreed to be an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(c) judgment be entered against defendants for three times the amount of damages sustained by plaintiff and the class, together with the costs of this suit and reasonable attorneys fees as provided by law;

(d) defendants be enjoined from engaging in the unlawful contract, combination or conspiracy alleged herein;

(e) plaintiff and other members of the class be awarded such other and further relief as the Court may deem just under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable in this cause.

Dated:  June 3, 2002                                              **BARRACK, RODOS & BACINE**

By:_____
    Steven A. Asher
    Mark R. Rosen
    Jeffrey A. Barrack
    3300 Two Commerce Square
    2001 Market Street
    Philadelphia, PA 19103
    (215) 963-0600

Jack L. Chestnut
Karl L. Cambronne
Brian N. Toder
Jeffrey D. Bores
**CHESTNUT & CAMBRONNE, P.A.**
3700 Piper Jaffray Tower
222 South Ninth Street
Minneapolis, MN 55402
(612) 339-7300

**Attorneys for Plaintiff**